**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **DANIEL GENE BOZE, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GREAT AMERICAN INSURANCE COMPANY,**<br><br>**Defendant.** | **Case No. 2:25-cv-00074**<br><br>**Chief Judge Waverly D. Crenshaw, Jr.**<br>**Magistrate Judge Alistair Newbern** |

**GREAT AMERICAN INSURANCE COMPANY'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT (COUNTS I, II, III, IV, AND V) PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**<u>Table of Contents</u>**

TABLE OF AUTHORITIES ..... iii
I. INTRODUCTION ..... 1
A. SUMMARY OF KEY DISMISSAL GROUNDS ..... 1
B. SUMMARY OF KEY FACTS ALLEGED IN THE COMPLAINT ..... 1
i. Great American made Good Farming Practices and Assigned Production Determinations. ..... 1
ii. USDA Upheld Great American's GFP Determination. ..... 2
iii. Arbitrator Resolved Assigned Production Dispute. ..... 2
iv. RMA Issued a Favorable 20(i) Determination after Remand. ..... 3
v. Material Pleading Deficiencies in Plaintiffs' Complaint. ..... 3
II. FEDERAL CROP INSURANCE POLICIES – LEGAL BACKGROUND ..... 4
A. PLAINTIFF'S POLICY TERMS ARE FEDERAL LAW ..... 4
B. ONLY FCIC MAY INTERPRET THE POLICY. ..... 5
C. FEDERAL LAW AND THE POLICY PREEMPT STATE LAW. ..... 6
D. THE POLICY TERMS ARE NOT WAIVABLE. ..... 6
E. DEFINED CONTRACT METHODS APPLY TO RESOLVE CLAIM DISAGREEMENTS AND GOVERN WHEN PAYMENT IS DUE. ..... 7

III. ARGUMENT .......... 9
A. STANDARD OF REVIEW .......... 9
B. ALL COUNTS ARE BEYOND THE FEDERAL LIMITATIONS PERIOD. .......... 10
i. Section 20's One-Year Contractual Limitations Period Has Run. .......... 10
ii. 7 U.S.C. § 1508(j)(2)(B) 1 Year Limitations Period Has Run. .......... 10
C. PLAINTIFFS' CLAIMS ARE BARRED BY THE POLICY'S MANDATORY ARBITRATION PROVISION. .......... 11
i. Section 20 Requires Arbitration of All Disputes. .......... 11
ii. Plaintiffs failed to initiate Arbitration within the Required One Year Limitations Period. .......... 12
iii. A Court Can Award Damages Only after the Conclusion of Arbitration–and there was no Arbitration of Plaintiffs' Claims. .......... 13
D. COUNT I: SECTION 20 DOES NOT CREATE A RIGHT TO DAMAGES. .......... 14
i. Section 20 Does Not Authorize an Independent Cause of Action. .......... 14
ii. Plaintiffs Have Not Requested "Judicial Review" of the Award. .......... 14
E. COUNT II: NO BREACH OF CONTRACT IS ACTUALLY ALLEGED .......... 15
F. COUNT III: GREAT AMERICAN IS NOT LIABLE FOR BAD FAITH. .......... 17
i. Tennessee Does Not Recognize a Common Law Bad Faith Tort Claim. .......... 17
ii. Great American did not Violate the Implied Duty of Good Faith and Fair Dealing. .......... 18
iii. Even if Tennessee Recognized Common Law Bad Faith, it would be Preempted .......... 18
G. COUNT IV: STATUTORY BAD FAITH CLAIM IS PREEMPTED BY FEDERAL LAW AND OTHERWISE INADEQUATELY PLED. .......... 19
i. Tennessee's Statutory Insurance Penalty Law is Federally Preempted as to Claims Concerning Federal Crop Insurance Policies .......... 19
ii. Loss Payment Was Not Due and Payable Until After the Arbitration Concluded. .......... 19
H. COUNT V: PLAINTIFFS FAILED TO ADEQUATELY PLEAD NEGLIGENCE, FRAUD, AND MISREPRESENTATION. .......... 21
IV. CONCLUSION .......... 22

## TABLE OF AUTHORITIES

### Cases

*Bell Atlantic v. Twombly*, 550 U.S. 544, 127 **S**. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................... 9
*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957) .......................................................................... 9
*De Rossett Hat Co. v. London Lancashire Fire Ins. Co.*,
134 Tenn. 199, 183 S.W. 720 (1915)........................................................................... 20
*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653 (Tenn. 2013)........................ 18
*Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003).......................................................... 12
*Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433 (Tenn. Ct. App. 2004)......................... 19, 20
*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396 (2008) ........................... 14
*Hodge v. Craig*, 382 S.W.3d 325 (Tenn. 2012)............................................................................ 21
*Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888 (Tenn. Ct. App. 2000) .......................................... 18
*Morrow v. State Farm Fire & Cas. Co.*, 592 F. Supp. 3d 672 (E.D. Tenn. 2022) .................. 8, 16
*Nobles v. Rural Community Ins. Services*, 122 F. Supp.2d 1290 (M.D. Ala. 2000)....................... 4
*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983)........................................................................................................ 6
*Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562 (Ct. App. Aug. 13, 2012)19
*Roberts v. Federal Crop Ins. Corp.*, 158 F. Supp. 688 (E.D. Wash. 1958).................................... 4
*Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020)............................................................................ 9
*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988). .................................. 9
*St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1913) ............... 21
*Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, No. 3:16-cv-2832,
2018 U.S. Dist. LEXIS 132639 (M.D. Tenn. Aug. 7, 2018) .................................................... 17
*Stooksbury v. Am. Nat'l Prop. & Cas. Co.*, 126 S.W.3d 505 (Tenn. Ct. App. 2003) .................. 20
*Thompson v. Bank of Am.,* N.A., 773 F.3d 741 (6th Cir. 2014)..................................................... 22
*Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29,
2012 U.S. Dist. LEXIS 96638 (E.D. Tenn. July 12, 2012).................................................. 6, 15
*TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)................................... 18
*Vaughn v. Producers Agric. Ins. Co.*, No. 1:14cv12-MW/GRJ,
2014 U.S. Dist. LEXIS 187255 (N.D. Fla. Nov. 3, 2014)....................................................... 14
*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008) ........................ 21, 22
*Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684 (Tenn. 1996) ........................................... 18
*Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*,
364 F. Supp. 3d 839, 845 (E.D. Tenn. 2019)......................................................................... 15
*Williams v. Berube & Assocs.*, 26 S.W.3d 640 (Tenn. Ct. App. 2000) ........................................ 22
*Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646 (M.D. Tenn. 2018) .............................................. 18

### Statutes

7 USC § 1506(l)........................................................................................................... 5
7 USC § 1506(r)........................................................................................................... 5
7 USC § 1508(j)(2)(B)................................................................................................. 10
7 USC § 1508(k)(1) ..................................................................................................... 4
7 USC § 6933................................................................................................................ 4
9 USC § 9 - 11 ............................................................................................................ 15

**Rules**

Fed. R. Civ. P. 8(a)(2) .... 9
Fed. R. Civ. P. 9(b) .... 22

**Regulations**

7 CFR § 400.352 .... 19
7 CFR § 400.766(b)(2) .... 5
7 CFR § 457.8 .... 4
7 CFR Part 400, Subpart X .... 5

**Common Crop Insurance Policy (CCIP) Provisions**

14(f) .... 7
20 .... 7, 12, 15
20(b) .... 15
20(b)(2) .... 13
20(b)(3) .... 10
20(b)(4) .... 5, 6
20(c) .... 15
20(d)(1)(ii) .... 7
20(h) .... 13, 14, 15
20(i) .... 13, 14, 15
31 .... 10
Preamble .... 4, 6

**Final Agency Determinations (FADs)**

FAD-195 .... 6
FAD-231 .... 6
FAD-240 .... 19
FAD-251 .... 19
FAD-298 .... 17
FAD-324 .... 11

**Tennessee Statutes**

Tenn. Code Ann. 56-7-105 .... 17, 19, 20, 21

## I. INTRODUCTION

### A. SUMMARY OF KEY DISMISSAL GROUNDS

- The federal statute of limitations and the dispute resolution provisions in Plaintiffs' policy terms bar Plaintiffs' claims, which are untimely and were subject to arbitration.
- *Count I – Judicial Review (Section 20)* does not allege a plausible or non-speculative claim; Section 20 preempts state law and does not create an independent cause of action.
- *Count II – Tennessee State Law (Contract)* does not allege any specific breach, demonstrates that Great American fully complied with the policy and timely paid all Plaintiffs were due in accordance with the policy's terms, and federal law preempts conflicting state law regarding the policy's requirements.
- *Count III – Tennessee State Law (Common Law Bad Faith)* demands relief for a claim which Tennessee law does not recognize, and which federal law preempts.
- *Count IV – Tennessee State Law (Statutory Bad Faith)* fails because the complaint demonstrates the loss claims were not due and payable until after the conclusion of the arbitration and were then timely paid in accordance with the policy, and because it is preempted by federal law.
- *Count V – Tennessee State Law (Tort)* does not allege sufficient facts to state a plausible or non-speculative claim for negligence, fraud, or misrepresentation and is preempted.

### B. SUMMARY OF KEY FACTS ALLEGED IN THE COMPLAINT

#### i. Great American made Good Farming Practices and Assigned Production Determinations.

Great American issued federal crop insurance policies for Plaintiffs' 2017 crops (the "Policy" or "Policies"). (Complaint, Doc. 1, the "Complaint" at ¶8.) In June of 2017, Plaintiffs submitted notices of loss to Great American as required by the Policy. Great American made two

separate determinations regarding Plaintiffs' claims: 1) that Plaintiffs failed to follow Good Farming Practices ("GFP"), as defined in the Policy, for the reasons summarized by Plaintiffs in Complaint ¶14; and 2) such GFP failures caused Plaintiffs' tobacco production losses. (Complaint ¶¶12-14.) Failure to follow GFP is not an insured cause of loss (Complaint ¶12), and therefore, Great American denied Plaintiffs' claims.

**ii. USDA Upheld Great American's GFP Determination.**

Plaintiffs appealed Great American's GFP-failure determinations to the USDA Risk Management Agency (RMA) in accordance with the Policy, and initiated arbitration with Great American on February 5, 2019, long before RMA's decision. (Complaint ¶¶15-20.) On August 27, 2019, RMA ultimately found that some of Plaintiffs' practices were adequate, but further concluded that Plaintiffs failed to implement appropriate post-emergent weed control measures. (Complaint ¶¶14, 18-20.) Notably, RMA upheld one of the independent grounds of Great American's denial determination only after the arbitration process that the Policy requires to resolve disputes over the amount of assigned production had already begun. (Complaint ¶26.)

**iii. Arbitrator Resolved Assigned Production Dispute.**

In accordance with the Policy, the parties arbitrated a dispute regarding Great American's determination concerning the amount of production assigned to uninsured causes due to failure to follow GFP. But Plaintiffs did not submit the claims now in issue in this suit to the Arbitrator. (Complaint ¶¶15-17, 24-25.) On November 2, 2020, the Arbitrator determined that Plaintiffs' failure to follow GFP was not the cause of their crop losses. (Complaint ¶¶24-25.) This November 2020 award determined the final, binding facts and figures Great American should use in calculating losses under the Policies. (Complaint ¶26 (Award ¶¶92-99); also see Doc. 1-2 (Arbitration Award.)) Within 2 weeks, Great American paid each of the Plaintiffs the amounts due, well within the 30-day deadline established by the Policy. (Complaint ¶27.) During the

arbitration, Plaintiffs failed to raise the issues of breach of contract, bad faith, late payment, negligence, fraud, or misrepresentation by Great American which the now allege in this lawsuit. Accordingly, the Arbitrator's Award did not include any findings regarding those issues. (Doc. 1-2, Arbitration Award).

**iv. RMA Issued a Favorable 20(i) Determination after Remand.**

Before Plaintiffs can seek an award of extracontractual damages, the Policies and federal regulations Plaintiffs to receive a determination from RMA that (1) Great American failed to comply with the Policies or FCIC procedures and (2) that such failure resulted in Plaintiffs receiving less than what they were entitled. (Complaint ¶¶ 28-29). This is known as a (20(i) determination. In January 2021, Plaintiffs sought a 20(i) determination, which RMA decline to grant. Plaintiffs then appealed RMA's denial to the USDA National Appeals Division ("NAD"). NAD upheld RMA's denial. Thereafter, Plaintiffs filed Case No. 2:23-cv-00068, seeking District Court review of the NAD appeal. On August 26, 2025, this Court granted Plaintiffs' motion for judgment on the administrative record and remanded the 20(i) determination back to RMAfor reconsideration in light of this Court's decision. (Complaint ¶¶ 30-41). On December 4, 2025, RMA issued a revised 20(i) determination finding that Great American's initial claim denials in February 2018 were permitted by procedure, but when FCIC issued its partially favorable August 27, 2019, decision, federal rules required Great American to reevaluate their claims and Great American had failed to do so. As a result, RMA granted Plaintiffs their requested 20(i) determination. (Doc. 12-1, 20(i) Determination.)

**v. Material Pleading Deficiencies in Plaintiffs' Complaint.**

Plaintiffs' Complaint lacks key factual allegations which are necessary to stating cognizable claims of the sort they have brought. Plaintiffs fail to allege any harms occurring within the statute of limitations or the Policy dispute resolution period. They fail to allege any

breaches of the Policy contract by Great American. They fail to allege that they were paid less than what they were entitled to, or that any payment was late, under the Policy. And they allege no specific instances of negligence, fraud, or misrepresentation.

## II. FEDERAL CROP INSURANCE POLICIES – LEGAL BACKGROUND

### A. PLAINTIFF'S POLICY TERMS ARE FEDERAL LAW

Plaintiffs' Multiple Peril Crop Insurance (MPCI) policies are not typical insurance policies. Crop insurance is a federal benefit program delivered in the form of insurance, partly funded by the federal treasury. Congress created the Federal Crop Insurance Corporation (FCIC) to implement the Federal Corp Insurance Act (FCIA) by regulating premiums and policy terms, defining the rights and obligations of the insurer and insured, defining the terms of dispute resolution procedures under subject policies, and reinsuring policies issued through private insurers. 7 USC § 1501, et seq. The USDA Risk Management Agency (RMA) administers FCIC. See 7 USC § 6933. FCIC provides reinsurance and premium subsidies for federal crop insurance policies, including the Plaintiffs' 2017 MPCI policies. See the Preamble to the Common Crop Insurance Provisions ("CCIP") published at 7 CFR § 457.8. [1] Also see 7 USC § 1508(k)(1).

Federal law defines the terms of the policies and governs any claims. The regulations dictating the form of policies issued by RMA have the force and effect of federal statute. *Roberts v. Federal Crop Ins. Corp.*, 158 F. Supp. 688, 694-695 (E.D. Wash. 1958); *Nobles v. Rural Community Ins. Services*, 122 F. Supp.2d 1290, 1294 (M.D. Ala. 2000). FCIC promulgated the general provisions applicable to Plaintiffs' policies as regulations at 7 CFR § 457.8 (2017 Ed.) (the Common Crop Insurance Policy, or "CCIP"), under the authority Congress granted in 7

[1] Defendant references 7 CFR 457.8 (2017 Ed.) herein as the "Common Crop Insurance Policy or "CCIP." RMA sometimes refers to those provisions as the "MPCI Basic Provisions."

USC § 1506(l), which statute also makes those terms enforceable as federal law.

**B. ONLY FCIC MAY INTERPRET THE POLICY.**

FCIC, per CCIP ¶20(b)(4), has exclusive authority to interpret the policy and procedure ("In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC. … Such interpretation will be binding."). (Doc. 1-1, CCIP ¶20(b)(4), PageID # 65.) Also see 7 CFR § 457.8 ¶20(b)(4) (2017 Ed.)).

FCIC issues its official interpretations through Final Agency Determinations (FADs) which are binding upon all participants in the Federal Crop Insurance Program under 7 CFR § 400.766(b)(2)[2] and 7 USC § 1506(r) (where Congress granted FCIC that power). Plaintiffs also agreed to be bound by such interpretations by entering into the insurance contract, whose terms include CCIP ¶20(b)(4). FADs are FCIC's official interpretations of its own regulations.[3,4]

The import of ¶20(b)(4) and 7 CFR Part 400, Subpart X (which defines the FAD process) and 7 USC § 1506(r) is that policy interpretation authority is reserved by law and regulation solely to FCIC. The Policy is not subject to traditional notions of waiver or estoppel or judicial interpretation. The FAD process assures consistent interpretation and ensures that all

---

[2] "All written final agency determinations issued by FCIC are binding on all participants in the Federal crop insurance program ... All written FCIC interpretations … are binding on the parties to the dispute, including the arbitrator, mediator, judge, or NAD." See 7 CFR § 400.766(b)(2). Prior to a regulatory restructuring effective in 2019, the equivalent rule appeared at § 400.765(c).

[3] Full text images of the FADs cited herein are attached with the pertinent parts highlighted.

[4] Fed. R. Evid. 201 permits the court to take judicial notice of official publications from public authorities obtained from reliable internet sources, which are self-authenticating under Rule 902(5). *Thomas v. Haslam*, 303 F. Supp. 3d 585, 625 (M.D. Tenn. 2018). The attached FADs are published by the U.S.D.A. Risk Management Agency on its website.

policyholders are treated alike. *See* FAD-195.[5] Earlier FADs remain binding until policy language changes occur. *See* FAD-231.[6]

**C. FEDERAL LAW AND THE POLICY PREEMPT STATE LAW.**

The Federal Crop Insurance Act (7 USC § 1501, et seq.), its implementing regulations, and the Policy terms specifically preempt or prohibit State law-based claims against federal crop insurers. Thus, state law must be displaced by federal law to the extent there is a conflict. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983). Indeed, this Court held in an earlier case between the same parties and regarding the same claims that Plaintiffs' claims were preempted because the Plaintiffs did not obtain a non-compliance determination from FCIC and that prior case law relying on a distinction between tort and contract cases is no longer applicable. *Boze v. Great Am. Ins. Co.*, 750 F. Supp. 3d 833, 842 (M.D. Tenn. 2024) (pending appeal). See below for information regarding prior case law.

**D. THE POLICY TERMS ARE NOT WAIVABLE.**

Both insurance providers and insureds are equally bound by the federally mandated policy terms. The CCIP states that "[t]he provisions of the policy may not be waived or varied in any way by us … or any employee of USDA." (CCIP Preamble.)And since the federal government–NOT Great American–wrote the policy terms, and CCIP ¶20(b)(4) prohibits the Court from interpreting the Policy, the Court cannot construe the policy terms against Great American. *Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29, 2012 U.S. Dist. LEXIS 96638 at * 10, Fn. 4 (E.D. Tenn. July 12, 2012) (policy cannot be construed against crop

---

[5] FAD-195 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://legacy.rma.usda.gov/regs/533/2013/fad-195.html.

[6] FAD-231 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-231.

insurer, as its terms are under exclusive FCIC control).

### E. DEFINED CONTRACT METHODS APPLY TO RESOLVE CLAIM DISAGREEMENTS AND GOVERN WHEN PAYMENT IS DUE.

For Good Farming Practices (GFP) controversies, there is an administrative decision-making and disagreement-resolution process defined in CCIP ¶ 20(d), which the Plaintiffs pursued with FCIC, to resolve questions about whether a policyholder's farming practice is a GFP. Here, FCIC partially agreed with Great American's GFP determinations, which became the final word on that issue under the policy method of reaching final determinations.

An insured may challenge the amount of production assigned to uninsured causes for failure to follow GFP through the contract-required, arbitration method. See CCIP ¶ 20(d)(1)(ii). The ability to challenge, modify, or reverse errors in or disagreements over such initially adverse determinations through that process is a part of the policy contract design, and using that process is a fulfillment of the contract, not a breach. The policy anticipates such disagreements and their resolution. CCIP ¶ 20 defines those resolution methods, and ¶ 14(f) sets the claim payment deadline for 30 days after those processes complete. (Doc. 1-1, PageID # 65, 54).

That mechanism allows the value of the loss or other disputes involving determinations to be decided with binding finality when there is a dispute between the policyholder and insurer about those things. Here, for example, there was just such a dispute over how much of the losses were caused by uninsured or insured causes and what numbers and values should apply to any final payments which might be due to the Plaintiffs. The parties followed that contract-required method to determine the amount of production loss to be assigned to uninsured GFP failures (none, as determined in the end) and the amounts to be paid. Reconsideration of disagreements about assigned production through that process is, by design, the contractually agreed method of how to get to the final claim decisions and numbers.

The insurer making an adverse determination against the insured is not a breach of contract, regardless of how the company arrived at the adverse determination, because the policy itself provides the required method for getting to the proper outcome before any disagreed claim decision is truly final. The ¶ 20 arbitration method is a process integral to the contract, not just a mere ADR requirement which might apply following a breach. It is the mandatory, final decision-making process required by the contract to which the parties agreed to resolve valuation and other disagreements *as part of* the contract, *before a claim is finalized*. It provides a contract-designated method to decide with finality the facts and numbers to be used in determining whether a payment is due under the contract and the amount of such payment when there is a disagreement about those things. It is analogous to an appraisement process which governs valuations in value-based insurance contracts. *Morrow v. State Farm Fire & Cas. Co.*, 592 F. Supp. 3d 672, 676 (E.D. Tenn. 2022) (appraisal proper to determine amount of loss). But the scope of the ¶ 20 arbitration method is broader than appraisement because it also establishes with finality other facts which are binding upon the insurance contract parties (such as the applicable cause of the loss). But it is a part of the contract which enables the parties to get to the binding, final numbers and then pay and close the claim, not a post-breach remedy.

The contract does not allow an arbitrator to award damages of any kind – any award must simply cause what is supposed to happen under the contract to happen, plugging in the factual and numeric findings the arbitrator makes as the inputs for that decision. See CCIP ¶ 20(h). Plainly, this is because arbitration is a decision-making mechanism which occurs within the bounds of the contract itself, whereas damages would be outside of it. The court should not confuse an arbitrator's decision that an insurer's initial determination was incorrect with that incorrect decision being a breach of contract. The limited-scope arbitration process is the fruition

of the contract's claim decision process, not a post-breach remedy. Treating every wrong-but-remedied-within-the-bounds-of-the-policy claim decision as a breach of contract would lead every disagreeing policyholder to claim favorable arbitration rulings entitle them to damages since they "got less" before the award than after its rendering. That is inconsistent with the processes for determination reconsideration and the damages limits which FCIC has imposed.

Notably, CCIP ¶14(f), which contains the contract terms governing when loss payments are owed, indicates that when the policyholder agrees the insurer's loss determination is correct, the right to payment matures upon reaching that agreement and the company must make payment within 30 days of that occurrence. But when the policyholder disagrees with the claim determination and follows the contractual processes in ¶ 20, no payment is due under the contract until 30 days after completion of that process. See CCIP ¶ 14(f) (Doc. 1-1, CCIP, PageID # 54). Only after the claim determination is set by that process is a loss payment due. It must be promptly paid – which, as Plaintiffs admit (Complaint ¶27), is exactly what happened.

## III. ARGUMENT

### A. STANDARD OF REVIEW

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020). And it must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Courts must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *Ryan v. Blackwell*, 979 F.3d 519 at 524.

### B. ALL COUNTS ARE BEYOND THE FEDERAL LIMITATIONS PERIOD.

Plaintiffs' claims are untimely and should be dismissed.

#### i. Section 20's One-Year Contractual Limitations Period Has Run.

Plaintiffs' Policy terms are not simple private contracts but federal regulations. See 7 CFR § 457.8 (2017 Ed.). The one-year statute of limitations at ¶20(b)(3) ("If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered …" bars Plaintiffs' claims. (Doc. 1-1, CCIP, PageID # 65)

Plaintiffs' Complaint and the Arbitration Award establish that the arbitration award was rendered on November 2, 2020. (Doc. 1, Complaint ¶ 25, and Doc. 1-2 (Arbitration Award).) Policy ¶20(b)(3) requires Plaintiffs to file suit within one year of that date. There is no question that Plaintiffs failed to do so. They filed this action on August 27, 2025.

To the extent that Tennessee state law provides a longer limitations period, that law is preempted by the one-year limitations period contained in ¶ 20(b)(3). *See* 7 USC 1506(1) ("State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations."); CCIP ¶31 ("If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.").

#### ii. 7 U.S.C. § 1508(j)(2)(B) 1 Year Limitations Period Has Run.

Plaintiffs' claim is likewise barred by 7 U.S.C. § 1508(j)(2)(B). This provision states that "[a] suit on the claim may be brought not later than 1 year after the date on which final notice of

denial of the claim is provided to the claimant." . FCIC recently interpreted the "we denied your claim" language from CCIP ¶ 20(b)(1) to mean the complete denial of a claim for any reason. FAD-324.[7]

Great American provided final notice of its denial of Plaintiffs' claim in a February 23, 2018 letter which Plaintiffs received in early March 2018 (Complaint ¶12), but Plaintiffs did not file suit until August 27, 2025. Because Plaintiffs failed to bring this action within one year of Great American's denial, Plaintiffs' claims are barred by 7 U.S.C. § 1508(j)(2)(B).

### C. PLAINTIFFS' CLAIMS ARE BARRED BY THE POLICY'S MANDATORY ARBITRATION PROVISION.

Plaintiffs' claims are subject to the Policy's mandatory arbitration clause. Because Plaintiffs failed to raise their claims at the arbitration, they were not evaluated by the arbitrator, and are not the proper subject of judicial review.

#### i. Section 20 Requires Arbitration of All Disputes.

The federal regulation that forms Plaintiffs' policies at 7 CFR § 457.8 states at CCIP ¶20(a)(1) that "[a]ll disputes involving determinations made by us [Great American], except those specified in section 20(d) or (e), are subject to mediation or arbitration." ¶20(b)(1) further states that arbitration proceedings must be initiated "within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later." (CCIP ¶20, Doc. 1-1, PageID # 65) "If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review." *Id*.

---

[7] FAD-324 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-324.

That arbitration process described in CCIP ¶20 and its many subparts is required for **all** disputes the policyholder has relating to contract determination disagreements. But here, Plaintiffs limited the matters they presented at arbitration to the production amount determinations. Plaintiffs raised no claims or arguments alleging breach of contract, bad faith, late payment under the Policy, negligence, fraud, or misrepresentation by Great American.

Plaintiffs cannot successfully argue that the claims raised in this suit were not arbitrable. Sixth Circuit precedent is clear: district courts have the authority to decide the scope of an arbitration clause, and actions that cannot be maintained without reference to the contract or relationship at issue are generally within the scope of a broad 'all disputes' arbitration clause. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). Regardless of the labels used in the Complaint, all of the Plaintiffs' factual allegations underlying their claims focus on the Policy's provisions, such as Complaint ¶8 (issuance of policies), ¶11 (premiums paid), ¶15 (Great American determines production assigned to uninsured causes under the policy), and ¶44 (failure to follow policy and procedure allegedly resulted in damages). (Doc. 1, Complaint.) Thus, Plaintiffs' claims "cannot be maintained without reference to the contract or relationship at issue" and were therefore subject to arbitration.

#### ii. Plaintiffs failed to initiate Arbitration within the Required One Year Limitations Period.

CCIP ¶20(b)(1) requires arbitration to be initiated within one year of the date of the determination or claim denial in issue as shown above. Plaintiffs' allegations center around Great American's purported failure to reevaluate the Plaintiffs' insurance claims in response to an August 27, 2019 reconsideration determination from RMA after initial claim denials in early 2018 (a failure Plaintiffs allege occurred *more than 6 months after they had already commenced arbitration* to resolve disputes as required under the Policy). (Doc. 1 (Complaint, ¶12, and ¶¶

20-21.)) By any measure, whether from the initial 2018 denials or the alleged 2019 failure to reevaluate, or even the Arbitration Award and subsequent claim payment, the one year limitations period expired years ago.

#### iii. A Court Can Award Damages Only after the Conclusion of Arbitration–and there was no Arbitration of Plaintiffs' Claims.

The policy requires arbitration of all claims as a prerequisite to "judicial review" of the dispute. Because Plaintiffs failed to arbitrate the claims asserted in this action, they must be dismissed.

The Policy clearly sets forth the process an insured must follow to receive an award of extracontractual damages. CCIP ¶¶ 20(b)(2) ), (h) ), and (i) require arbitration as a prerequisite for any suit, and require RMA approval for any damages awards::

> 20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.
>
> …
>
> (b) Regardless of whether mediation is elected:
>
> (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
>
> (2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;
>
> …
>
> (h) Except as provided in section 20(i), no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with section 26.
>
> (i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled. …
>
> CCIP ¶¶ 20(b), (h), and (i).

The above Policy provisions make clear that to receive an award of extracontractual damages, the insured must first successfully arbitrate its claims and receive a 20(i) determination from RMA. Only then can the insured file suit for extracontractual damages.

The Arbitration Award does not consider any of the claims Plaintiffs have included in Counts I-V–because Plaintiffs never raised those claims in arbitration. (Doc. 1-2 (Arbitration Award).) Because Plaintiffs failed to satisfy the first prong of the process required by the Policy, they are not entitled to the judicial review contemplated by CCIP ¶¶ 20 (b), (h), and (i).

**D. COUNT I: SECTION 20 DOES NOT CREATE A RIGHT TO DAMAGES.**

Plaintiffs' Count I claims do not state a claim, are otherwise preempted, and should be dismissed.

**i. Section 20 Does Not Authorize an Independent Cause of Action.**

Plaintiffs assert they are entitled to extra-contractual damages pursuant to CCIP ¶20(h) and (i) ( Doc. 1-1, CCIP, PageID # 66). But nothing in any part of ¶20 creates an affirmative right to relief.

Cases addressing the claim that ¶20(i) is itself a source of relief are rare, but the federal district courts that have considered the issue have ruled that ¶20(i) does not support a cause of action disconnected from a claim for review of an arbitration award. See e.g. *Vaughn v. Producers Agric. Ins. Co.*, No. 1:14cv12-MW/GRJ, 2014 U.S. Dist. LEXIS 187255 at *5 (N.D. Fla. Nov. 3, 2014). Likewise, the FCIC has never suggested that ¶20 creates an independent right of action.

**ii. Plaintiffs Have Not Requested "Judicial Review" of the Award.**

The U.S. Supreme Court has ruled that judicial review of an arbitrator's award is limited to the narrow review available under the Federal Arbitration Act (FAA). *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587, 128 S. Ct. 1396, 1405 (2008). FAA sections 9 through 11

provide for expedited judicial review to confirm, vacate, or modify awards. 9 USC. §§ 9-11.

CCIP ¶ 20 references "judicial review" several times, including in subparagraphs ¶ 20(b), ¶ 20(c), ¶ 20(h), and ¶ 20(i). When considering "judicial review" under Section 20(c), the Eastern District of Tennessee has held that the Policy language contemplates only the narrow review available under the FAA. *Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29, 2012 U.S. Dist. LEXIS 96638 at * 9 (E.D. Tenn. July 12, 2012); *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 845 (E.D. Tenn. 2019). But Plaintiffs have not requested confirmation, vacatur, or modification of an arbitration award in this case, and therefore have not requested "judicial review" of the Award. Great American can only assume Plaintiffs have not requested judicial review of the Award because it awarded Plaintiffs the full limits available under the policy.

If Plaintiffs seek some other species of judicial review unique to ¶ 20(i), they have explained no legal basis or support for it, and FCIC has not opined that ¶ 20(i) judicial review differs from FAA review.

The Court should dismiss Plaintiffs' ¶20(i) claims because ¶20(i) creates no right of action disconnected from a claim for review of an arbitration award, and Plaintiffs have requested no such review.

### E. COUNT II: NO BREACH OF CONTRACT IS ACTUALLY ALLEGED

Despite Plaintiffs' naked allegation of a breach of contract, they allege no facts demonstrating any breach, nor do they allege Great American failed to comply with the Policy. To the contrary, Plaintiffs allege Great American *followed* the contract: Great American made decisions[8] which the Plaintiffs contested using the Policy's required disagreement-resolution

[8] Complaint, ¶10.

method,[9] and Great American then participated in that disagreement-resolution process in exactly the manner the Policy requires,[10] respected the outcome,[11] and paid the amounts determined to be due under the Policy[12] as soon as the right to payment matured. The complaint is devoid of any facts which demonstrate Great American breached the contract and its deadlines. Thus, Plaintiffs allege compliance with the contract, not a breach.

The Complaint seems to imply that Great American breached the Policy when it denied Plaintiffs' claim because the Arbitrator subsequently disagreed with Great American's determination. However, a claim denial is not a breach of contract, regardless of how the company arrived at the adverse determination, because the Policy itself provides the required method for arriving at the proper outcome before any claim decision is truly final.

Unlike most contractually mandated arbitrations, the ¶20 arbitration process is *not* an ADR process the parties use to remedy a purported breach. It is the mandatory, final decision-making process required by the Policy to resolve valuation and other disagreements *as part of* the contract, *before a claim is finalized*. It provides a contract-designated method to decide with finality the facts and numbers the crop insurer should use to determine whether a payment is due and the amount of such payment when there is a disagreement. It is analogous to an appraisement process which governs valuations in value-based insurance contracts. *Morrow v. State Farm Fire & Cas. Co.*, 592 F. Supp. 3d 672, 676 (E.D. Tenn. 2022) (appraisal proper to determine amount of loss). But the scope of the ¶20 arbitration method is broader than appraisement because it also establishes with finality other facts which are binding upon the

---

[9] Complaint, ¶14.

[10] Complaint, ¶¶22-23.

[11] Complaint, ¶26 (which seemingly quotes from the award but which misstates portions of it by adding words not used or findings not made; see, for example, award ¶¶ 21, and 88).

[12] Complaint, ¶25.

insurance contract parties (such as the applicable cause of the loss).

CCIP ¶14(f) further supports Great American's position that it did not breach the Policy. It expressly provides that when the policyholder disagrees with the insurer's claim determination and follows ¶ 20's disagreement-resolution process, *no payment is due under the contract until 30 days after completion of that process*. See CCIP ¶14(f) (Doc. 1-1, CCIP, PageID # 54). Plaintiffs admit that Great American paid Plaintiffs the full loss amount determined by the disagreement-resolution process well within the 30-day deadline (Complaint ¶27).

Moreover, Plaintiffs' breach of contract claim cannot rest on any allegations of failure to follow procedures in FCIC's Loss Adjustment Manual Standards Handbook ("LAM") because FCIC has made clear that "procedures established by FCIC in the LAM" are not "part of the contract between the AIP and the policyholder." FAD-298.[13]

Plaintiffs have failed to allege that Great American did anything but *comply* with the policy. Accordingly, Count II should be dismissed.

**F. COUNT III: GREAT AMERICAN IS NOT LIABLE FOR BAD FAITH.**

**i. Tennessee Does Not Recognize a Common Law Bad Faith Tort Claim.**

Tennessee does not recognize a tort claim for common law bad faith conduct by an insurer against an insured; the exclusive remedy for such alleged conduct is statutory, provided by T.C.A. § 56-7-105. *Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, No. 3:16-cv-2832, 2018 U.S. Dist. LEXIS 132639 at *24-25 (M.D. Tenn. Aug. 7, 2018). Since there is no such claim, the court must dismiss Count III.

[13] FAD-298 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-298.

**ii. Great American did not Violate the Implied Duty of Good Faith and Fair Dealing.**

"Tennessee law recognizes an implied covenant of good faith and fair dealing in every contract." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013). "What this duty consists of, however, depends upon the individual contract in each case." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)). "The common law duty of good faith does not extend beyond the reasonable contractual expectations of the parties." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Mbrshp. Corp.*, 529 S.W.3d 413 at 426. And an alleged breach of the implied covenant of good faith and fair dealing is not an independent claim, but rather is part of a breach of contract claim. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 699 (M.D. Tenn. 2018); *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000).

Complaint ¶71 alleges, as part of Plaintiffs' "Common Law Bad Faith" claim, that Great American violated the implied duty of good faith and fair dealing. But as explained above, Tennessee law does not recognize a claim for common law bad faith.

And even if Plaintiffs intended to assert violations of the duty of good faith and fair dealing in connection with their breach of contract claim, as explained above in Sec. E, Great American fully complied with all Policy provisions. Because there was no breach of contract, there was no breach of the implied duty of good faith and fair dealing.

**iii. Even if Tennessee Recognized Common Law Bad Faith, it would be Preempted.**

Any bad faith claim is also preempted by the Policy terms and crop insurance regulations, for the reasons demonstrated above. See FAD 251 (explaining federal law preempts "any claim, including a claim for extra-contractual damages, that arises under or is related to a Federal crop insurance policy," FCIC considers all unauthorized extra-contractual damages awards to conflict

with 7 CFR § 400.352, and finding any prior court awards to the contrary to be in error); see also Section II.C and *infra* Sec. G.

Count III fails for numerous reasons and should be dismissed.

### G. COUNT IV: STATUTORY BAD FAITH CLAIM IS PREEMPTED BY FEDERAL LAW AND OTHERWISE INADEQUATELY PLED.

#### i. Tennessee's Statutory Insurance Penalty Law is Federally Preempted as to Claims Concerning Federal Crop Insurance Policies

Tennessee courts recognize that, in the context of federal crop insurance, "claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105 are preempted for they pertain to actions or inactions 'required or authorized' under the [Federal Crop Insurance Act], federal regulations, or the policy provisions." *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562, at *34-35 (Ct. App. Aug. 13, 2012).[14] Furthermore, 7 CFR § 400.352(b prohibits states from levying various charges, penalties, or damages on federally reinsured insurance carriers. Plaintiffs' claims in Count IV are therefore preempted as a matter of law and should be dismissed.

#### ii. Loss Payment Was Not Due and Payable Until After the Arbitration Concluded.

The facts alleged also do not support imposition of a statutory penalty even if it were not otherwise preempted. "Tenn. Code Ann. § 56-7-105(a) is penal in nature and must be strictly construed." *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). To recover bad faith penalties under that statute, a plaintiff must prove: "(1) the policy of insurance

[14] FCIC indicated in FAD-240 and FAD-251, both of which are attached, that *Plants* was incorrect as to its allowance of certain claims. But on this point, it is correct and remains good law in Tennessee. Both are published on the RMA website, with FAD-240 at https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-240 and FAD-251 at https://www.rma.usda.gov/policy-procedure/final-agency-determinations/final-agency-determination-fad-251.

must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Id.*, quoting *Stooksbury v. Am. Nat'l Prop. & Cas. Co.*, 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003).

The Policy provisions anticipate that policyholders and insurers will have disagreements regarding loss payments. Payment of an indemnity under the Policy is not owed until the *later* of: reaching an agreement; *the completion of arbitration*, reconsideration of determinations regarding Good Farming Practices or any other appeal; and completion of any USDA investigation. (Doc. 1-1, CCIP ¶14(f), PageID # 54). Thus, payment was not due to Plaintiffs until completion of the arbitration; any contrary state law is preempted.

Moreover, for more than a century, Tennessee courts have held that the right to payment under a policy of insurance must have actually matured before the requisite TCA § 56-7-105(a) demand for payment is made and the 60-day pay-or-be-penalized waiting period commences. A demand for payment made *before* maturity is not a sufficient demand under the penalty statute. See *De Rossett Hat Co. v. London Lancashire Fire Ins. Co.*, 134 Tenn. 199, 183 S.W. 720 (1915) (applying what is now TCA § 56-7-105(a)). And when a policy provides its own dispute resolution mechanism, such as arbitration or appraisement, for determining and fixing the value of the loss when there is a dispute between the policyholder and insurer, Tennessee courts have applied the rule that maturity occurs only after that dispute resolution process is complete: "Where proofs of loss are furnished, and no demand is made for arbitration, the policy matures at the expiration of the number of days fixed for maturement in the policy after such submission of proofs. [But where] the policy provides for payment after the lapse of a given number of days

after the filing of an award, where an arbitration has been demanded, the date of maturity, for the purposes of the present statute, would be governed by the number of days so fixed in the contract." *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 69-70, 164 S.W. 1186, 1190 (1913). The latter is exactly the situation before the Court. Plaintiffs and Great American disagreed over the value and extent of the loss, and they followed the dispute resolution method defined in the Policy to resolve that disagreement. At the conclusion of this process, the Arbitrator issued the Award, and Plaintiffs' right to payment matured. The Complaint does not allege otherwise.

Great American fulfilled its contractual duty to pay the indemnities once the parties completed arbitration as required by the Policy, and Great American paid immediately after the Award was rendered. No Policy provision required payment before that time, and there is no allegation in the complaint of a post-maturity demand or of any delayed payment. Plaintiffs' claims in Count IV never matured and they have not pled sufficient grounds to support the relief they seek under TCA § 56-7-105(a). Count IV should be dismissed.

### H. COUNT V: PLAINTIFFS FAILED TO ADEQUATELY PLEAD NEGLIGENCE, FRAUD, AND MISREPRESENTATION.

In Tennessee, fraud, fraudulent misrepresentation, and intentional misrepresentation are different names for the same action. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012). To establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show: 1) the defendant made a representation of an existing or past fact; 2) which was false when made; 3) and which was in regard to a material fact; 4) and was made either knowingly, or without belief in its truth, or recklessly; 5) and plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). To succeed on a claim for negligent

misrepresentation, a plaintiff must establish "that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Id.* (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)).

Both legal theories require Plaintiffs to establish that Great American "made a false statement of material fact that is designed to induce the plaintiff to rely on it." *Thompson v. Bank of Am.,* N.A., 773 F.3d 741, 752 (6th Cir. 2014). Plaintiffs have not alleged any false or misleading statements of material fact by Great American. Plaintiffs' allegations center on Great American's GFP determination and its assignment of the amount of production to uninsured causes, but Plaintiffs do not allege that Great American supplied information to Plaintiffs that was false or misleading, much less that Plaintiffs relied on such information.

Claims for common-law fraud or for fraudulent or negligent misrepresentation must comply with Fed. R. Civ. P. 9(b). *Thompson v. Bank of Am., N.A.*, 773 F.3d 741 at 751. Accordingly, Plaintiffs must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud to satisfy Fed. R. Civ. P. 9(b) .None of those particularity requirements are met here, and claims for damages are preempted as discussed above. See Section II.C. Accordingly, Count V should be dismissed.

## IV. CONCLUSION

For these reasons, Great American respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice, as to all Counts asserted.

Respectfully submitted,

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr., Esq.
(OH Bar No. 0073531)
(*pro hac vice application pending*):
**SANDERS & ASSOCIATES, LPA**
8040 Hosbrook Road, Suite 202
Cincinnati, OH 45236
Phone: (513) 229-8080
Fax: (513) 229-8081
TomJames@SandersLPA.com

*s/ Brigid M. Carpenter*
Brigid M. Carpenter (TN BPR #018134)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-7341 (telephone)
(615) 744-7341 (facsimile)
bcarpenter@bakerdonelson.com

**Attorneys for Defendant Great American**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing through the Court's Electronic Case Filing System (CM/ECF), upon Plaintiffs' attorney, Wendell L. Hoskins II, Law Office of Wendell L. Hoskins II, 404 Ward Ave., P.O. Box 1115, Caruthersville, MO 63830 (Wendell@WendellHoskins.com), this 2nd day of February 2026.

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr.